UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
CHARON MARTINEZ o/b/o  :
JOSAIAH A. RAMIREZ,  :
                                                      :      **07 Civ. 8848 (HB)**
                            **Plaintiff,**  :
     -against-                            :      **OPINION & ORDER**
                                                        :
**MICHAEL J. ASTRUE**  :
**Commissioner of Social Security,**  :
                                                       :
                            **Defendant.**  :
------------------------------------------------------------x

**Hon. HAROLD BAER, JR., District Judge:**[1]

     On June 22, 2006, Plaintiff Charon Martinez applied for Supplemental Security Income ("SSI") benefits on behalf of her then-twelve-month-old son, Josaiah Ramirez ("Josaiah"), alleging that Josaiah had a disability due to his delayed development. Plaintiff's application was denied, and she requested a hearing before an Administrative Law Judge ("ALJ"), who also denied her application. Plaintiff appealed to the Appeals Council of the Social Security Administration, which affirmed the ALJ's decision on August 31, 2007.

     Plaintiff timely commenced this action to challenge the determination of the Commissioner of Social Security ("Commissioner"), that Josaiah was not disabled within the meaning of the Social Security Act and thus not entitled to disability benefits. The Commissioner moves for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c) on the ground that the ALJ's determination was supported by substantial evidence. For the reasons set forth below, the Commissioner's motion is denied and the case is remanded for further proceedings consistent with this opinion.

## I. BACKGROUND

**A.**   **Relevant Medical Evidence**

     On May 20, 2006, when Josaiah was eleven months old, Wendy Guzman-Rosa, a bilingual licensed social worker, evaluated Josaiah and recorded Plaintiff's observations as his mother. (R. at 83.) Plaintiff told Guzman-Rosa that she was concerned about her son's communication development as he only said two words, "mama" and "dada," and did not use

---

[1] Alena Timchenko, a second year law student at the Benjamin N. Cardozo School of Law, contributed substantial research and analysis to this opinion.

words spontaneously to communicate his wants and needs. (Id.) Plaintiff reported that despite a lack of expressive language skills, Josaiah had basic receptive language abilities. (Id.) Based on her own observations and the results of standardized tests, Guzman-Rosa found that Josaiah's development was within acceptable ranges in the adaptive, cognitive, communication, social/emotional and physical function areas. (R. at 87.) Therefore, she determined that Josaiah was not eligible for the NYC Early Intervention Program.[2] (Id.)

A week later, Plaintiff took Josaiah for a second evaluation by a social worker, Osvaldo Bolanos, who evaluated Josaiah in Plaintiff's home on May 27, 2006. Bolanos recorded that Josaiah demonstrated average cognitive, social and adaptive daily living skills. (R. at 79-81.) Josaiah demonstrated below average physical development, with a standard deviation of negative 0.9. (R. at 81.) For example, he could not walk while holding onto furniture or move from standing to sitting in a controlled fashion. (Id.) It was difficult for Josaiah to take a few steps while receiving assistance from others. (Id.) Bolanos recommended that Josaiah receive physical and occupational therapy evaluations to further explore these concerns. (Id.) Josaiah's overall communication skills were poor with a negative 1.4 standard deviation, and his vocabulary consisted of approximately two words. (R. at 80.) Unlike the first social worker, Mr. Bolanos recorded that Josaiah did not have a word for his mother. (Id.) Although Josaiah would stop an activity when his name was called, he would not stop an activity upon hearing a person say "no" to him. (Id.) Bolanos recommended that Josaiah receive a speech language evaluation to further explore these concerns. (Id.)

The same day, speech pathologist Joanne Spera, evaluated Josaiah using the Preschool Language Scale-4 ("PLS-4") test,[3] clinical observations and parent interview. An informal assessment of articulation, voice and fluency could not be conducted due to Josaiah's limited speech output. (R. at 75.) The Preschool Language Scale-4 test revealed that Josaiah's receptive language (i.e., understanding of language) was more than 33% delayed, with an age equivalent of a five-month old, and that his expressive language (i.e., verbal and non-verbal language used to express needs and wants) was more than 25% delayed, with an age equivalent of a seven-month old. The test also revealed that Josaiah's total language was 33% delayed, an age equivalent of a

---

[2] "The Early Intervention Program offers a variety of therapeutic and support services to eligible infants and toddlers with disabilities and their families." New York State Department of Health, www.health.state.ny.us/community/infants_children/early_intervention.

[3] "The Preschool Language Scale-4 is a standardized test used to assess auditory comprehension (understanding of language) and expressive language (verbal and nonverbal language used to express needs and wants) in children from birth to six years of age." (R. at 75.)

six-month old. (R. at 76.) Josaiah did not consistently respond to his name being called, search for the source of a sound, look at objects to which a person pointed, understand what a person wanted when that person extended his/her hand and said "come with me" or understand specific words and phrases. (Id.) Josaiah could not vocalize two different vowel or consonant sounds. (Id.) Spera recommended speech-language therapy and an audiological assessment. (R. at 77.)

On June 1, 2006, physical therapist Martha Londono evaluated Josaiah using the Alberta Infant Motor Scale ("AIMS"),[4] clinical observation and parent interview. (R. at 70.) She concluded that Josaiah exhibited problems following commands. (Id.) His gross motor skills were at the level of a nine- to ten-month year old boy, according to the AIMS and clinical assessment, which amounted to one standard deviation below the mean. (R. at 71.) He could move around his apartment without a problem. (R. at 70.) Josaiah's movement was normal for his age, and physical therapy was not recommended. (Id.)

Soon thereafter, on June 7, 2006, occupational therapist Elouise McIver evaluated Josaiah using the Peabody Developmental Motor Scales ("PDMS"),[5] clinical observation and parent interview. During clinical observations Josaiah was responsive to his environment and therapist, and able to localize sounds, track toys and respond when his name was called. (R. at 64-65.) Josaiah demonstrated weakness in his hands and inconsistently grasped and manipulated items when they were placed directly above him or in midline. (R. at 65.) He briefly exhibited slight difficulty with manipulating cubes and pellets in an age appropriate manner. (Id.) Josaiah was dependent in all areas of activities of daily living skills, unable to use a spoon or a cup, was not toilet trained and required maximum assistance with putting on and taking off his clothes. (Id.) His grasping and visual motor skills were evaluated using the PDMS, which showed a seven-month delay with grasping and a five-month delay with visual motor skills. (R. at 66.) Occupational therapy was recommended. (Id.)

The record contains a "NYC Early Intervention Program Summary of Multidisciplinary Evaluation/Screening" signed on June 8, 2006.[6] Josaiah's receptive language was significantly

---

[4] This is a norm-referenced test that assesses gross motor skills for children from birth to 18 months. (R. at 71.)
[5] Designed to evaluate children from birth through age 5, the PDMS-2 is composed of six subtests that assess related motor abilities that develop early in life: Reflexes, Stationary (body control and equilibrium), Locomotion, Object Manipulation, Grasping, and Visual-Motor Integration. Western Psychological Services, portal.wpspublish.com/portal/page?_pageid=53,69919&_dad=portal&_schema=PORTAL.
[6] The evaluator's name could not be discerned from the record. (R. at 91.)

delayed at 2.1 standard deviations below the mean, and his expressive language was moderately delayed at 1.6 standard deviations below the mean. (R. at 91.) Josaiah's overall language scores were 2.0 standard deviations below the mean. (Id.) Josaiah demonstrated average cognition, social/emotional, adaptive, and gross motor skills. (R. at 91-92.) Josaiah was determined to be eligible for the NYC Early Intervention program "based on delay." (R. at 93.)

In a "Childhood Disability Evaluation Form" dated June 22, 2006, Karen Prowda, MD, determined that Josaiah had mild speech delays and resolved Erb-Duchenne Palsy.[7] (R. at 57.) She classified Josaiah's impairment or combination of impairments as "severe, but does not meet, medically equal, or functionally equal the listings," *i.e.*, lists of conditions considered to be disabilities within the meaning of the Social Security Act. (Id.) She found no limitation in Josaiah's age cognition, physical well-being, ability to attend and complete tasks, care for himself, move around and manipulate objects. (R. at 59-60.) She found a less than marked limitation in interacting and relating with others. (R. at 59.) Josaiah's total language age was six months, even though he was one year old, and he had two words in his vocabulary. (Id.) He consistently responded to his name, understood simple commands and expressed affection. (Id.)

On July 9, 2007, Dr. Lee Morris, Josaiah's pediatrician, completed a Social Security Administration Medical Report. He had most recently examined Josaiah on July 3, 2007, when Josaiah was nearly two years old. He found that Josaiah had asthma, (R. at 112), but was otherwise in good physical health, (R. at 109). He noted that Josaiah had a "developmental delay" for which he received speech and occupational therapy. (R. at 111.) However, Dr. Morris did not indicate in his cursory remarks the degree of such delay, and there is no evidence that the ALJ considered Dr. Morris's evaluation when he denied Plaintiff's application for SSI benefits for Josaiah.

**B.     Hearing Testimony**

During the hearing before the ALJ on July 10, 2007, Plaintiff testified that although Josaiah, who was then two years old, was able to verbalize words, his speech was delayed, he was enrolled in an early intervention program, (R. at 118), and received speech and occupational therapy (R. at 124). She reported that Josaiah had made some progress since starting therapy a year earlier. (R. at 119.)

---

[7] Erb-Duchenne Palsy is a paralysis of the arm caused by injury to the upper group of the arm's main nerves almost always occurring during birth.

Dr. Brust, a Board-certified pediatrician, then interviewed Plaintiff. (R. at 121-22.) Plaintiff testified that the most recent complete evaluation of Josaiah had occurred when he was 11 months old and that his annual exam would take place the next day, on July 11, 2007. (R. at 119.) Plaintiff testified that Josaiah was able to say at least a dozen words, finger feed, use a sippy cup and drink from a straw when held for him. (R. at 120.) He would try to help his mother undress him, and he could take off his socks. Id. He could not use a spoon and was not toilet trained. (Id.) He could not name animals or body parts. (R. at 121.)

Dr. Brust did not examine Josaiah, and he cautioned that his testimony was based solely on Josaiah's evaluations through eleven months of age and on his interview of the Plaintiff. (R. at 122.) Dr. Brust told the ALJ that a comprehensive evaluation was needed to accurately evaluate Josaiah's impairments at his current age of two. (Id.) The ALJ indicated that he would request the comprehensive evaluation, but there is no evidence that he did so or, if he did, what the results were. (See R. at 123.)

Dr. Brust testified that Josaiah had a developmental delay that appeared to be moderately significant in the areas of cognition, speech and language, (id.), and was significantly limited in acquiring and using information, which was evident from Josaiah's language delay and his difficulty in identifying body parts and pictures, (R. at 124). Based on his interview of the Plaintiff, Dr. Brust testified that, at the age of two, Josaiah's daily living skills were delayed because at age two children should be able to handle a straw by themselves, use a spoon and undress. (Id.) Dr. Brust opined that Josaiah had no "significant" limitations but had a marked limitation in acquiring and using information. (R. at 124, 126.)

## II. DISCUSSION

### A.     Scope of Judicial Review Pursuant to 42 U.S.C. § 405(g)

"A [federal district] court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). The Commissioner's findings are conclusive unless they are not supported by substantial evidence. 42 U.S.C. § 405(g); see Diaz v. Shalala, 59 F.3d 307, 312 (2d Cir. 1995) (reviewing court must consider the Commissioner's findings to be conclusive when Commissioner's decision is supported by substantial evidence). A district court is "precluded from undertaking a *de novo* standard of review." Valentin v. Barnhart, 339 F. Supp. 2d 596, 598 (S.D.N.Y. 2004). Moreover, a court must affirm the Commissioner's decision if there is substantial evidence to

support the conclusion, even if the district court might have ruled differently were it to have made the initial determination. Schauer v. Schweiker, 675 F.2d 55, 57 (2d Cir. 1982).

Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richard v. Perales, 402 U.S. 389, 401 (1971) (quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). The court must look at the supporting evidence "in light of the other evidence in the record that might detract from such finding, including any contradictory evidence and evidence from which conflicting inferences may be drawn." Beckles v. Barnhart, 340 F. Supp. 2d 285, 287 (E.D.N.Y. 2004) (quoting Rivera v. Sullivan, 771 F. Supp. 1339, 1351 (S.D.N.Y. 1991)). If the court finds that there is substantial evidence supporting the Commissioner's decision, it must be upheld, even if there is also substantial evidence supporting the plaintiff's position. See Alston v. Sullivan, 904 F.2d 122, 126 (2d Cir. 1990).

Remand is warranted where "there are gaps in the administrative record or the ALJ has applied an improper legal standard." Rosa v. Callahan, 168 F.3d 72, 82-83 (2d Cir. 1999) (citations omitted). Remand is also appropriate if the ALJ's findings are not specific enough to permit intelligible review of the record. Pratts v. Charter, 94 F.3d 34, 39 (2d Cir. 1996); Gonzalez v. Astrue, No. 07 Civ. 2841, 2008 WL 2262618, at *8 (S.D.N.Y. May 30, 2008) (remand was warranted because the ALJ failed to present any reasoning to justify his finding that witnesses' testimony regarding a child's impairments was not credible).

**B.     Legal Standard for Determining Eligibility for Disability Benefits**

For a child to qualify for SSI benefits, the child must be disabled within the meaning of the Social Security Act. Allen v. Barnhart, No. 05 Civ. 7855, 2006 WL 2255113, at *4 (S.D.N.Y. Aug. 4, 2006); see 42 U.S.C. §§ 1381-85. A child under the age of 18 is disabled within the meaning of the Act if the child has "a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C)(i).

The Commissioner has established a three-step sequential analysis for evaluating disability. See 20 C.F.R. § 416.924(a)-(d). The ALJ must first determine whether the child is

engaged in "substantial gainful activity."  Id. § 416.924(a), (b).[8]  If so, the child is ineligible for SSI benefits.  Id.  Second, if the child is not engaged in substantial gainful activity, the ALJ must consider whether the child has a physical or mental impairment or a combination of impairments that is "severe," defined as more than a "slight abnormality or combination of slight abnormalities" which causes "more than minimal functional limitations."  Id. § 416.924(c).  Third, if the child's impairment or combination of impairments is severe, the ALJ must determine whether the impairment or combination of impairments meets, medically equals, or functionally equals the disabilities listed in 20 C.F.R. § 404, Subpart P, Appendix 1 (the "Listings").  Id. § 416.924(d).  If the child's impairment meets or medically equals a listed impairment, or functionally equals the listings, and meets the duration requirement, the ALJ must find the child to be disabled.  Id. § 416.924(d)(1).

If the child does not have a listed impairment, the judge must evaluate whether the child's impairment or combination of impairments "results in limitations that functionally equal the listings."  Id. § 416.926a(a).  To demonstrate functional equivalence, the child must exhibit "marked" limitations in two of the following six domains of functioning, or an "extreme" limitation in one of the following six domains: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for oneself; and (6) health and physical well-being.  Id. § 416.926a(a), (b)(1).

A "marked" limitation means "more than moderate" but "less than extreme."  Id. § 416.926a(e)(2)(i).  A "marked" limitation "interferes seriously with [the child's] ability to independently initiate, sustain, or complete activities."  Id.  A child has a "marked" limitation when (1) he or she scores "two standard deviations or more below the mean, but less than three standard deviations" on a comprehensive standardized test designed to measure ability or functioning in that domain, and (2) the child's day-to-day functioning in domain-related activities is consistent with that score.  Id. § 416.926a(e)(2)(iii).  If the child has not yet attained the age of three, and there are no standard scores from standardized tests in the child's record, the child has a "marked" limitation if he or she is functioning at a level that is more than one-half but not more than two-thirds of his or her chronological age.  Id. § 416.926a(e)(2)(ii).

---

[8] Generally, "substantial gainful activity is work activity that is both substantial and gainful," where "substantial" is defined as "work activity that involves doing significant physical or mental activities" and "gainful" work is work that one does for pay or profit.  20 C.F.R. § 416.972(a), (b).

An "extreme" limitation "interferes *very* seriously with [a child's] ability to independently initiate, sustain, or complete activities . . . [and] does not necessarily mean a total lack or loss of ability to function." Id. § 416.926a(e)(3)(i) (emphasis added). A child has an "extreme" when (1) he or she scores "three standard deviations or more below the mean" on a comprehensive standardized test designed to measure ability or functioning in that domain and (2) the child's day-to-day functioning in domain-related activities is consistent with that score. Id. § 416.926a(e)(3)(iii). If the child has not yet attained the age of three, and there are no standard scores from standardized tests in the child's record, the child has an "extreme" limitation if he or she is functioning at a level that is one-half or less of his or her chronological age. Id. § 416.926a(e)(3)(ii).

**C.     ALJ's Findings**

The ALJ found that Josaiah "has not been disabled, as defined in the Social Security Act, since June 22, 2006, the date the application was filed." (R. at 19.) Using the three-step sequential analysis described above, the ALJ determined (1) that Josaiah was a child who was not engaged in substantial gainful activity; (2) that Josaiah did not have an impairment or combination of impairments that met or medically equaled any of the listed impairments; and (3) that Josaiah suffered from a marked limitation only in the domain of acquiring and using information, a less than marked limitation in the domain of interacting and relating with others, no limitation in the domain of attending and completing tasks, no limitation in the domain of moving about and manipulating objects, no limitation in the domain of caring for yourself and no limitation in the domain of health and physical well-being. (R. at 16-17.) Accordingly, the ALJ concluded that Josaiah did not have an impairment or combination of impairments that met, medically equaled or functionally equaled any of the Listings, (R. at 16), *i.e.* Josaiah "does not have an impairment or combination of impairments that results in either a 'marked' limitation in two domains of functioning or an 'extreme' limitation in one domain of functioning." (R. at 18.)

**D.     The ALJ Failed to Fulfill His Duty to Develop the Record**

"It is the rule in our circuit that the ALJ . . . must . . . affirmatively develop the record in light of the essentially non-adversarial nature of a benefits proceeding." Pratts, 94 F.3d at 37 (internal citations omitted). Although the burden of establishing a disability lies with the claimant, the Commissioner is obligated to make all reasonable steps to help the claimant develop her case by exploring the record and obtaining additional relevant information. Gonzalez, 2008 WL 2262618, at *5; see 42 U.S.C. § 423(d)(5)(B) (setting forth duty to obtain

medical history and records); 20 C.F.R. § 404.1512(d)-(f) (describing affirmative duty of ALJ to make every reasonable effort to help the plaintiff obtain a complete medical history from treating sources); see Hankerson v. Harris, 636 F.2d 893, 895 (2d Cir. 1980) ("[I]n such cases where the claimant was handicapped by lack of counsel at the administrative hearing, the reviewing court has a duty to make a searching investigation of the record to ensure that the claimant's rights have been adequately protected.") (quotation marks omitted).

When the claimant appears pro se, as here, "the ALJ is under a heightened duty to scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts." Cruz v. Sullivan, 912 F.2d 8, 11 (2d Cir. 1990) (citations omitted) (emphasis added). What is reasonable depends on the circumstances. See, e.g., Gonzalez, 2008 WL 2262618, at *6 ("At times it may be most reasonable for the ALJ to explain to the claimant that she should obtain a more detailed statement from the treating physician."); Hankerson, 636 F.2d at 896 (holding that the ALJ erred in failing to advise plaintiff that he should obtain a more detailed statement from his treating physician); Jones v. Apfel, 66 F. Supp 2d 518, 530 (S.D.N.Y. 1999) (remanding the case where the ALJ "never offered to subpoena [the claimant's] medical records for her" and "did not explain why the medical records were necessary, or that he was planning to rule against [the claimant] and that she needed to produce evidence from her treating physicians to convince him otherwise.").

Here, the ALJ did not adequately fulfill his affirmative obligation to assist this *pro se* claimant in developing her case. See Cruz, 912 F.2d at 12 (finding that the ALJ did not satisfy the heightened standard because the ALJ failed to obtain hospital records and to inquire whether the nature of claimant's asthma had changed over the years). The disability period at issue runs from the date that Plaintiff filed an application for SSI benefits through the day of the ALJ's decision, *i.e.*, from June 22, 2006, when Josaiah was 1 year old, to July 13, 2007, when Josaiah was two years old. At the time of the hearing on July 10, 2007, Josaiah was 2 years old. Plaintiff testified that he had not had a "complete evaluation recently," but that he was scheduled for his "annual review" the day after the hearing at 11:00 a.m. (R. at 119.) Nevertheless, the ALJ issued a ruling three days later, on July 13, 2007, denying the two-year-old Josaiah SSI benefits based on medical records that described his impairments at the age of approximately 11-12 months. (R. at 16-19.) The ALJ failed to ask for or examine the doctor's notes from the annual review that he knew would take place the following day.

The record relied on by the ALJ was therefore incomplete. The record failed to include any records that addressed Josaiah's developmental delay past 12 months of age. See McClain v. Apfel, No. 99 Civ. 3236, 2001 WL 66403, at *10 (S.D.N.Y. Jan. 26, 2001) (holding that record was incomplete because the ALJ relied on outdated reports and on records documenting the child's development until the age of four but did not issue his opinion until the child was seven).

Although the record contained a medical report by Dr. Morris, who examined Josaiah at nearly two years of age, that report mentions only that Josaiah had a "fine motor and speech delay" and a "developmental delay," with no further explanation.[9] (See R. at 108, 111.) There is no indication that the ALJ considered Dr. Morris's report. The ALJ had the duty to develop the record with regard to Dr. Morris's evaluation, but he failed to do so. See, e.g., Santos v. Barnhart, 2005 WL 119359, at *8 (E.D.N.Y. Jan. 7, 2005) (finding that "the ALJ fell short of discharging her duty to develop the record" because "the record shows no attempt to contact [the treating physician] for an assessment of [the claimant's] impairments and their impact on the relevant six domains.")

Courts in this circuit have held that, in cases involving *pro se* plaintiffs, the ALJ must "make every reasonable effort to obtain not merely the medical records of the treating physician but also a report that sets forth the opinion of that treating physician as to the existence, the nature, and the severity of the claimed disability." Peed v. Sullivan, 778 F. Supp 1241, 1246 (E.D.N.Y. 1991); see Gonzalez, 2008 WL 2262618, at *6 ("[I]f the documents received lack any necessary information, the ALJ should recontact the treating physician.")

The ALJ could have asked Plaintiff to obtain a more detailed assessment from Dr. Morris as to Josaiah's impairments and their impact on the relevant six domains, requested such information himself, or issued a subpoena to obtain such information. Instead, the ALJ merely noted Dr. Morris's remark that "claimant is receiving therapy and doing well." (See R. at 19.) As such, the ALJ did not satisfy his legal obligation. See Cruz, 912 F.2d at 12 (the fact that the "ALJ only asked which hospital Cruz had been treated, and yet did not seek to obtain those hospital records" was one reason why the ALJ failed to develop the record.)

---

[9] The ALJ briefly addressed Dr. Morris' evaluation, stating that "the most recent medical report from the treating source, Dr. Morris, stated claimant is receiving therapy and doing well." (R. at 19). This misconstrues Dr. Morris findings. With regard to Josaiah's mental well-being, all Dr. Morris stated was that Josaiah "receives speech therapy and occupational therapy for 30 minutes twice a week as deemed necessary after evaluation to Early Intervention." Dr. Morris diagnosed Josaiah with "developmental delay." (R. at 111).

In evaluating whether Josaiah's impairment in the domain of acquiring and using information was "functionally equivalent" within the meaning of § 416.924(a), the ALJ was required to consider the appropriate functioning of children in Josaiah's age group as set forth in 20 C.F.R. § 416.926a(d)(2)(i-v). The age appropriate functioning of a child in the category of "Newborns and young infants" (birth to attainment of age 1) and "Older infants and toddlers" (age 1 to attainment of age 3) differs significantly under the regulations. See 20 C.F.R. § 416.926a(g)(2)(i-ii).[10] Without updated evaluations reflecting the extent of Josaiah's impairments after 12 months, the ALJ could not properly assess the appropriate functioning of Josaiah as an "older infant and toddler." At the administrative hearing, Dr. Brust testified that he "think[s] we need to see the current [comprehensive evaluation]." (R. at 122.) Dr. Brust's testimony was "based on what [Josaiah] was at 11 months." Id. Having failed to obtain any relevant medical evidence passed the age of approximately 11 months, the ALJ had failed in his affirmative duty to fully develop the record. See McClain, 2001 WL 66403, at *9-10. "[T]he record before us is simply inadequate to support a denial of benefits. Much of [the claimant's] medical history is missing." See Pratts, 94 F.3d at 38; Rosa, 168 F.3d at 80.

**E.     Remand Is Appropriate**

Because the record in this case is incomplete, remand is appropriate. See Hankerson, 636 F.2d at 895 ("[R]emand is still appropriate due to the ALJ's failure to assist this *pro se* litigant in securing all of the relevant medical testimony.").

A finding that the Commissioner has failed to specify the basis for his conclusion may warrant remand. See, e.g., Knapp v. Apfel, 11 F. Supp. 2d 235, 238 (N.D.N.Y. July 10, 1998). Here, the ALJ determined that "the statements [by the claimant] concerning the intensity, persistence and limiting effects of the claimant's symptoms are not entirely credible." (R. at 18.) However, the ALJ failed to present any reasoning for his determination that Plaintiff's testimony,

---

[10] For example, 20 C.F.R. § 416.926a(g)(2)(i), which applies to newborns and young infants (birth to attainment of age 1), explains that during the course of this year a child's actions "should become deliberate and purposeful, as when you shake noisemaking toys like a bell or rattle." The child "should begin to recognize, and then anticipate, routine situations and events, as when you grin with expectation at the sight of your stroller." On the other hand, 20 C.F.R. § 416.926a(g)(2)(ii), which applies to older infants and toddlers (age 1 to attainment of age 3), explains that during these years the child is "learning about the world around you. When you play, you should learn how objects go together in different ways. You should learn that by pretending, your actions can represent real things." The child should refer to yourself and things around you by pointing and eventually by naming. You should form concepts and solve simple problems . . . ." Moreover, common sense tells us that a child is expected to develop quite differently during her first year of life and from ages 1 to 3.

-11-

on behalf of Josaiah, was not credible. On remand, the ALJ should explain the reasons for such findings. See Gonzalez, 2008 WL 2262618, at *8 ("[O]n remand the ALJ should set forth with greater specificity which aspects of [the claimant's] testimony he found not credible and the reasons underlying that finding.").

Plaintiff has submitted to this Court a Preschool Student Evaluation Summary Report, a Bilingual Social History, a Bilingual Psychological Evaluation and a Bilingual Speech and Language Evaluation, all of which are dated after the disability period at issue. However this evidence is at least "arguably relevant to the time period for which benefits were denied" since it may reflect the progression of Josaiah's impairments. Martinez v. Astrue, No. 07 Civ. 3156, 2008 WL 4178155, at *9 (S.D.N.Y. Sept. 8, 2008). Therefore, "while it is doubtful that this newly-submitted evidence would b[y] itself justify a remand . . . there is no harm in allowing this evidence to be presented at the new hearing following remand. Indeed, the ALJ should develop the record as appropriate to allow any additional relevant evidence." Id.

### F. Substantial Evidence

As discussed in detail above, the ALJ has failed to adequately develop the record regarding Josaiah's functional equivalency. Where the ALJ has failed to adequately develop the record "the Court need not—indeed, cannot—reach the question of whether the Commissioner's denial of benefits was based on substantial evidence." Jones, 66 F.Supp 2d at 542; Gonzales, 2008 WL 2262618, at *8 (any review of whether the decision was based on substantial evidence must be deferred until the record is complete.). Accordingly, this Court need not address whether the evidence before the ALJ was substantial with respect to Josaiah's impairments.

### III. CONCLUSION

For the foregoing reasons, the Commissioner's motion for judgment on the pleadings is denied and the case is remanded for further proceedings consistent with this opinion.

**SO ORDERED**

**New York, New York**
**November 5, 2008**

_____
U.S.D.J.